## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| FEGLEY MANAGEMENT & ENERGY, LLC, FEGLEY ENTERPRISES, INC. d/b/a BETHLEHEM BREW WORKS, FEGLEY ENTERPRISES II, INC. d/b/a ALLENTOWN BREW WORKS & FEGLEY'S BREW WORKS, and FEGLEY REAL ESTATE, LLC, | : : : : : : : | Case No. 2:20-cv-04652 |
| Plaintiffs, | : : |  |
| v. | : : |  |
| THE CINCINNATI INSURANCE COMPANY | : : |  |
| and | : : |  |
| HMK INSURANCE, | : : |  |
| Defendants. | : : |  |

## <u>ORDER</u>

**AND NOW,** this _____ day of _____, 2020, upon consideration of

Defendant's Motion, Pursuant to F.R.Civ. P. 12(b), to Dismiss Plaintiffs' Complaint and any

response thereto, it is hereby

**ORDERED and DECREED** that Defendants' Motion to Dismiss is granted.


BY THE COURT:


_____
**Edward G. Smith, U.S.D.J.**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FEGLEY MANAGEMENT & ENERGY, LLC, FEGLEY ENTERPRISES, INC. d/b/a BETHLEHEM BREW WORKS, FEGLEY ENTERPRISES II, INC. d/b/a ALLENTOWN BREW WORKS & FEGLEY'S BREW WORKS, and FEGLEY REAL ESTATE, LLC, | : : : : : : : | Case No. 2:20-cv-04652 |
| Plaintiffs, | : : | |
| v. | : : | |
| THE CINCINNATI INSURANCE COMPANY | : : | |
| and | : : | |
| HMK INSURANCE, | : : | |
| Defendants. | : : | |

## MOTION OF THE CINCINNATI INSURANCE COMPANY TO
## DISMISS PLAINTIFFS' COMPLAINT

Defendant The Cincinnati Insurance Company moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint of Fegley Management & Energy, LLC, Fegley Enterprises, Inc. d/b/a Bethlehem Brew Works, Fegley Enterprises II, Inc. d/b/a Allentown Brew Works & Fegley's Brew Works, and Fegley Real Estate, LLC.

In support of this motion, Defendant The Cincinnati Insurance Company relies upon and incorporates by reference the accompanying Memorandum of Law and Exhibits.   Oral Argument is requested.

Respectfully submitted,

**[Signature on next page]**

**LITCHFIELD CAVO LLP**


BY:   /s/ Lawrence M. Silverman
          Lawrence M. Silverman
          (Bar ID No. 17854)
          1515 Market Street, Suite 1220
          Philadelphia, PA  19102
          Telephone:  215.557.0111
          Facsimile:  215.557.3771
          silverman@litchfieldcavo.com

*Attorneys for Defendant,*
*The Cincinnati Insurance Company*

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FEGLEY MANAGEMENT & ENERGY, LLC, FEGLEY ENTERPRISES, INC. d/b/a BETHLEHEM BREW WORKS, FEGLEY ENTERPRISES II, INC. d/b/a ALLENTOWN BREW WORKS & FEGLEY'S BREW WORKS, and FEGLEY REAL ESTATE, LLC, | Case No. 2:20-cv-04652 |
| Plaintiffs, | |
| v. | |
| THE CINCINNATI INSURANCE COMPANY | |
| and | |
| HMK INSURANCE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE CINCINNATI INSURANCE
COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

The Policies at issue supply property insurance coverage. They operate to indemnify for loss or damage to property, such as in the case of a fire or storm. But, even where present, Coronavirus does not damage property; it hurts people. Nevertheless, Plaintiffs demand the Policies' Business Income, Extra Expense, Extended Business Income, and Civil Authority coverages. These coverages protect Plaintiffs only for income losses tied to physical loss or damage to property, not for economic loss caused by government orders or other efforts to protect the public from disease. A growing number of recent decisions agree that there is no coverage in this situation. *See* Argument, *infra*. These cases find that the Coronavirus and related government orders do ***not*** cause physical loss or damage to property as required for coverage under insurance policies like Plaintiffs'.

1

At bottom, Plaintiffs bear the initial burden of showing actual direct physical loss or damage to property. This is always necessary to make a *prima facie* case for property insurance coverage. Yet, Plaintiffs' allegations establish that they have not sustained any direct physical loss or damage to property. Rather, Plaintiffs ask this Court to find the Policies apply to cover purely financial losses sustained as a result of COVID-19 and related orders requiring Plaintiffs' restaurants to temporarily cease in-person dining operations, and its other non-essential business tenants to temporarily cease or reduce in-person operations. But, because direct physical loss or damage to property is a fundamental prerequisite to any coverage under the Policies, they ask for a vast extension of Pennsylvania law that would create coverage where there is none. This should not be permitted.  For all of these reasons, and for the other reasons established below, Plaintiffs' Complaint should be dismissed.

## STATEMENT OF FACTS

### I.     Allegations of the Complaint

The Complaint includes the following allegations:

- Fegley Management & Energy, LLC, Fegley Enterprises, Inc., d/b/a Bethlehem Brew Works , Fegley Enterprises II, Inc., d/b/a Allentown Brew Works & Fegley's Brew Works [collectively, "Fegley" or "Plaintiffs"] are a [Pennsylvania] limited liability company and [Pennsylvania] s-corporate entities . . . which maintain their principal places of business [in Allentown, Pennsylvania]. (Compl. at ¶ 1).

- Fegley Management & Energy, LLC, Fegley Enterprises, Inc., d/b/a Bethlehem Brew Works, Fegley Enterprises II, Inc., d/b/a Allentown Brew Works & Fegley's Brew Works own, maintain, manage and control two restaurants located [in] Allentown, PA . . . (hereafter collectively "Restaurant Premises"). (Compl. at ¶ 3).

- Fegley Real Estate, LLC is a real estate holding company which owns, maintains, manages and controls rental properties located in the Commonwealth of Pennsylvania, including, but not limited to premises located [in] Allentown, PA . . . (hereafter "Rental Premises"). (Compl. at ¶ 4).

- Cincinnati, through its agent [Defendant HMK Insurance] issued to Fegley written policies of insurance Nos. 05EPP0467258 and 05EPP0177037 (hereafter the "Policies", copies of the Declaration pages of which are attached hereto as Exhibits 1 and 2), which provide coverage for the Restaurant Premises and the Rental Premises, which remain in full force and effect at all times material hereto. (Compl. at ¶ 9).[1]

- The Policies, issued by Cincinnati through its agent, HMK, provide property coverage for the Restaurant Premises and the Rental Premises under terms and conditions set forth in language copy-written by the Insurance Services Office, Inc. ("ISO") which provides standard forms for insurance companies including Cincinnati. (Compl. at ¶ 11).

- The Policies issued by Cincinnati . . . contain identical language with respect to the property coverages which are at issue in this Civil Action. (Compl. at ¶ 12).

- The Policies contain the ISO "Special" Cause of Loss form (FM101-05-16) which states that Cincinnati will "...pay for direct "loss" to covered property at the premises caused by or resulting from any Covered cause of Loss." (Compl. at ¶ 14).

- The ISO form (FM101-05-16) defines Covered Cause of Loss as "Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this coverage part." (Compl. at ¶ 15).

- There is no exclusion or limitation in the Policies for loss caused directly or indirectly by virus, pandemic or related perils. (Compl. at ¶ 16).

- The Policies form (FM101-05-16) define "loss" as "...accidental physical loss **or** accidental physical damage." (emphasis supplied). (Compl. at ¶ 17).

- The Policies also provide coverage for Business Income and Extra Expense under ISO Endorsement FA 213-05-16 . . . . (Compl. at ¶ 21).

- On or around March 2020, the United States, including the premises insured under the Policies, were infested with an insidious, invisible virus identified as SARS-CoV-2 and COVID-19 (hereafter "Virus") which caused an unprecedented Pandemic which afflicted millions of people and raised serious concerns among the general public as to its spread and containment. (Compl. at ¶ 24).

- On March 19, 2020, Pennsylvania Governor Tom Wolf issued an executive Order closing all "businesses that are not life sustaining" effective March 21, 2020 based, in part on a declaration by the World Health Organization and the Centers for Disease Control and Prevention that the virus had created a "public health emergency of international concern"

---

[1] Certified copies of Policy No. EPP 046 7258 and Policy No. EPP 017 7037 are attached to this brief as Exhibit A and B, respectively.

and had been declared by the U.S. Department of Health and Human Services Secretary to "create a public health emergency." (Exhibit 3). (Compl. at ¶ 25).

- In his Order, Governor Wolf declared a "disaster emergency throughout the Commonwealth of Pennsylvania" and ordered the closure of all "non-life sustaining businesses" for "...the prevention and suppression of disease." (Compl. at ¶ 26).

- Pursuant to this Executive Order, Fegley immediately closed the Restaurant Premises and the tenants of the Rental Premises were closed and ceased all business operations. (Compl. at ¶ 27).

- The closures included the restaurants located in Bethlehem and Allentown operated by Fegley as well as the tenants of the Rental Premises in Allentown, including Hertz, Smooth Roots Tent and the Culture Jam Restaurant. (Compl. at ¶ 28).

- As a result of these closures, Business Income from these locations ceased and Fegley has spent and incurred substantial Extra Expenses to maintain these premises to minimize the suspension of operations and continue business when possible. This includes periodic maintenance to disinfect these premises and clean surfaces infected with the virus. (Compl. at ¶ 29).

- Claims for Business Income Loss and Extra Expense benefits under the Policies were submitted to Cincinnati through its agent HMK . . . . (Compl. at ¶ 30).

- . . . [Cincinnati] sent correspondence dated May 4, 2020 denying Fegley's claims for Business Interruption and Extra Expense. . . . (Compl. at ¶ 32).

- [Cincinnati] den[ied] coverage and benefits owed under the Policies without conducting any investigation whatsoever and in spite of the clear policy language granting coverage for these losses to Fegley. (Compl. at ¶ 33).

- [Cincinnati's] assertion that there has been no direct physical damage to insured property (even though this is not required under the "Causes of Loss" provision of the Policies) is plainly untrue since the virus pandemic has been declared to constitute a "Disaster Emergency" which has affected all property located in the Commonwealth of Pennsylvania, including the premises insured under the Cincinnati Policies. (Compl. at ¶ 36).

- [Cincinnati's] assertion that the acts of Government authority to close Fegley's businesses because of the pandemic causing "dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss" [sic] is plainly untrue since the infection of premises by the virus is clearly set forth in Governor Wolf's Order as the cause of the closures. (Compl. at ¶ 37).

- The Policies issued by Cincinnati to Fegley are contracts of adhesion and any ambiguity in their terms or doubts with regard to the application of coverage are to be resolved in favor of the policyholder and coverage granted in accordance with the reasonable expectations of the policyholder. (Compl. at ¶ 42).

- Fegley reasonable believed and relied on the terms of the Policy to afford coverage and benefits in the event that the businesses were closed as a result of the damage to the premises and acts of civil authority in response to a virus pandemic as occurred here. (Compl. at ¶ 43).

- Cincinnati has breached its contract of insurance and violated its duty of good faith and fair dealing by denying coverage and benefits to Fegley which are clearly owed under the terms of the Policies. (Compl. at ¶ 44).

- Cincinnati has engaged in bad faith conduct toward Fegley with respect to its adjustment of Plaintiffs' covered loss, in violation of 42 Pa. C.S.A §8371 et seq. (Compl. at ¶¶ 47-48).

- HMK has served as Fegley's insurance agent, broker and consultant for at least the past ten years and, by virtue of this relationship is intimately familiar with Fegley's business operations and insurance needs. (Compl. at ¶ 52).

- By reason of HMK's longstanding role as the insurance agent, broker and consultant for Fegley and its familiarity with its business operations and insurance needs, a special relationship existed between Fegley and HMK and HMK knew that Fegley trusted and relied on it to provide the necessary insurance coverage against all reasonably anticipated risks of loss. (Compl. at ¶ 53).

- By reason of its background and experience as insurance agent and consultant for Fegley, HMK knew, or in the exercise of reasonable care should have known, that virus contagion such as SARS, EBOLA and most recently SARS-CoV-2 and COVID-19, created a grave risk of pandemic and resulting catastrophic losses to Fegley's business operations as a result of the contamination of Fegley's premises and the actions of civil authority to prevent, contain and suppress the virus. (Compl. at ¶ 54).

- Despite this knowledge, and the existence of available insurance coverage to specifically insure against risk of loss from a pandemic, HMK failed to advise, assist and provide Fegley with this necessary and available specific coverage. (Compl. at ¶ 55).

- If, as claimed by Cincinnati, there is no coverage for the losses suffered by Fegley as a result of this pandemic, HMK's negligent failure to advise, assist and provide Fegley with the necessary pandemic coverage is the direct and proximate cause of Fegley's losses and damages as set forth above. (Compl. at ¶ 56).

5

## II.      The Plaintiffs' Policies

### A.      The Insurance Policies at Issue

The Cincinnati Insurance Company issued Policy No. EPP 046 7258 to Plaintiffs Fegley Management & Energy, LLC, Fegley Enterprises, Inc. d/b/a Bethlehem Brew Works, and Fegley Enterprises II, Inc. d/b/a Allentown Brew Works & Fegley's Brew Works for the policy period December 31, 2017 to December 31, 2020 ("the Restaurant Policy"). (Compl. at ¶ 9, Ex. 1; CIC Ex. A, Policy, pp. 1, 5). The Rental Policy insures Plaintiffs' Restaurant Premises in Pennsylvania. (Compl., Ex. 1; CIC Ex. A, Policy, p. 6).

The Cincinnati Insurance Company also issued Policy No. EPP 017 7037 to Plaintiff Fegley Real Estate, LLC for the policy period December 31, 2018 to December 31, 2021 ("the Rental Policy"). (Compl. at ¶ 9, Ex. 2; CIC Ex. B, Policy, p. 1). The Rental Policy insures Plaintiffs' Rental Premises in Pennsylvania. (Compl., Ex. 2; CIC Ex. B, Policy, p. 5).[2]

For present purposes, the pertinent forms are form FM 101 05 16 (Building and Personal Property Coverage Form), and form FA 213 05 16 (Business Income (and Extra Expense) Coverage Form). (*See, e.g.*, CIC Ex. A, pp. 25-64 & 112-120).[3] The Building and Personal Property Coverage form, FM 101 05 16, is the main property coverage form. The Business Income

---

[2] As alleged in the Complaint, the pertinent policy forms in the Restaurant Policy and the Rental Policy are identical. (Compl. at ¶ 12). As such, unless otherwise noted, Cincinnati refers to those policies collectively as "the Policies." Additionally, for brevity, and unless otherwise noted, citations to the policy page numbers refer to the bates stamped page numbers in the lower margin of the Restaurant Policy ("CIC Ex. A, p. __").

[3] Plaintiffs repeatedly and incorrectly assert that these forms are standard coverage forms "copy-written" by the Insurance Services Offices, Inc. ("ISO"). (*See, e.g.*, Compl. at ¶¶ 11, 14-15, 21-23). This directly conflicts with the Policies themselves, which note only that forms FM 101 05 16 and FA 213 05 16 "include" copyrighted material of the ISO with its permission. It also conflicts with the plain language of the ISO forms, which are public records available through the National Association of Insurance Commissioners' (NAIC) System for Electronic Rates & Forms Filing (SERFF) via the Pennsylvania Insurance Department's website: https://www.insurance.pa.gov/Companies/IndustryActivity/Pages/Approval-Rate-and-Form-Filing-Search.aspx; https://filingaccess.serff.com/sfa/search/filingSearch.xhtml. A print out of the ISO form search parameters and results, dated October 6, 2020, is attached as Exhibit C. A cursory review of these forms show the Policies do not contain the standard ISO forms. As will be shown, this Court may take judicial notice of the ISO form filings for purposes of this Motion to Dismiss. Additionally, where as here, the allegations of the Complaint conflict with the Policy and ISO forms, the Policy and ISO forms control. *See*, Argument, *infra*.

6

(and Extra Expense) Coverage form, FA 213 05 16, addresses business income and extra expense. Using the same language, both forms supply Business Income, Extra Expense, Extended Business Income, and Civil Authority coverage, but only if the necessary elements for coverage are satisfied.

### B.     The Policies' Direct Physical Loss or Damage Requirement

The requirement of "direct physical loss" or "direct physical damage" is a core element in property insurance policies like Plaintiffs'. The requirement appears in multiple places. For example, direct physical loss or damage to the Plaintiffs' property is required for Business Income coverage:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

(CIC Ex. A, pp. 42 & 112).

Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (CIC Ex. A, pp. 29 & 113). "Loss" is defined, in relevant part, as physical loss or physical damage. (*See* CIC Ex. A, pp. 62 & 120). Accordingly, there is no Covered Cause of Loss, and therefore no Business Income coverage unless the insured first establishes that there is direct physical loss or damage to covered property. A Covered Cause of Loss, and thus direct physical loss (or damage), is an express requirement for any coverage under the Policy, including the Extra Expense and Civil Authority coverages Plaintiffs seek. (CIC Ex. A, pp. 43 & 112-113 (Extra Expense); pp. 43 & 113 (Civil Authority)). Additionally, the Extended Business Income coverage does not apply unless the insured first sustains a "'Business Income' 'loss' payable under [the Policy]." (CIC Ex. A., pp. 44 & 114). Thus, direct physical loss or damage is required for Extended Business Income coverage.

Furthermore, while the definition of Covered Cause of Loss refers to exclusions, exclusions do not come into play unless there is first direct physical loss or damage. *See, e.g.*, *Erie Ins. Grp. v. Catania*, 95 A.3d 320, 322 (2014) ("In actions arising under an insurance policy [Pennsylvania] courts have established a general rule that it is a necessary prerequisite for the insured to establish that his claim falls within the coverage provided by the insurance policy."); *Estate of O'Connell ex rel. O'Connell v. Progressive Ins. Co.*, 2013 PA Super 271, 79 A.3d 1134, 1138 (2013). This well-established rule of law extends to preclude coverage where, as here, Plaintiffs fail to allege facts to show that the existence of the virus or the related government orders ("the Orders") caused direct physical loss or damage to its covered property or the property of others.

### C.   Additional Requirements for Coverage Under the Policies

The Civil Authority coverage also requires, among other things, direct physical loss or damage to property other than the insured's property. And, the civil authorities must issue orders prohibiting access to the insured's property as a result of such loss or damage. (CIC Ex. A, pp. 43 & 113).[4]

## ARGUMENT

## I.   Motion to Dismiss Standard

Dismissal is an appropriate mechanism here because this Motion presents a pure question of law. A motion to dismiss for failure to state a claim should prevail if, after the complaint's factual allegations are taken as true and all reasonable inferences are made in favor of the nonmoving party, the nonmoving party cannot prove facts supporting its claim. *See, e.g.*, *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011), *citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, a

---

[4] There are other requirements for the Policies' Civil Authority coverage that Cincinnati does not rely on for this Motion. However, Cincinnati does not waive the right to raise those requirements at a later time.

complaint must contain sufficient factual matter to show the claim for relief is "plausible on its face." *Warren Gen. Hosp.*, 643 F.3d at 84; *and see Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *citing Twombly,* 550 U.S. at 570. A claim does not meet the plausibility standard unless it includes enough factual content to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Importantly, legal conclusions and other unsupported conclusions stated in the Complaint may not be considered in determining a motion to dismiss. *See, e.g., Fischbein v. Olson Research Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020) (In determining whether plaintiff has stated a claim sufficient to survive a motion to dismiss, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007), *cert. denied*, 552 U.S. 1021 (2007) (On a motion to dismiss, the Court does not accept as true "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.") (internal citations and quotations omitted); *Iqbal,* 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Additionally, the Court should consider the insurance Policies and the Orders. *See, e.g., Doe v. Univ. of Sciences*, 961 F.3d 203 (3d Cir. 2020) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint[,] exhibits attached to the complaint, and matters of public record. In addition, 'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'") (alteration in original; internal citations omitted); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if

the plaintiff's claims are based on the document."). The Policies and Orders are integral to the Complaint. The Policies are attached in part to the Complaint, and in full to this brief. Governor Wolf's Order is attached to the Complaint. And, that order and other related orders are matters of public record.

Here, the Complaint's allegations are in conflict with the terms of the Policies and the Orders. This means that the Policies and the Orders control.  *See, e.g.*, *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859, n. 8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 & n. 22 (4th ed.) (Wright & Miller) ("It appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.") (collecting cases).

Indeed, dismissal for failure to state a claim is appropriate where, as here, the plain and unambiguous language of the parties' contract shows the Plaintiffs cannot "plausibly allege" their contradictory interpretation. *D & M Sales, Inc. v. Lorillard Tobacco Co.*, No. CIV.A.09-2644, 2010 WL 786550, at *4 (E.D. Pa. Mar. 8, 2010) (Padova, D.J.). In this context, any amendment of the Complaint would be futile since "Plaintiff[s] cannot state a claim in light of the controlling contractual terms." *D & M Sales, Inc.*, No. CIV.A.09-2644, 2010 WL 786550, at *4.

## II.    There is No Direct Physical Loss or Damage and Therefore No Coverage

The Complaint does not state a plausible claim for relief as required by *Twombly* and *Iqbal* because there are no factually supported, non-conclusory allegations of direct physical loss or damage to property. Moreover, although Plaintiffs assert that the presence of the virus causes direct

physical loss or damage to property, there are no factual allegations to show that Coronavirus was present at Plaintiffs' properties.[5] And, even if it were, it can be removed by cleaning. Moreover, Plaintiffs do not allege facts showing the Orders caused physical harm to property. The undisputed fact is that there was no physical difference to Plaintiffs' properties after the Orders were issued than before. Accordingly, Plaintiffs cannot possibly prove their claim for coverage.

### A.    The Plain and Unambiguous Language of the Policies Requires Direct *Physical* Loss or Damage To Property

Under Pennsylvania law, "When the terms of an insurance policy are clear and unambiguous, the court is bound to give effect to the policy and cannot interpret the policy to mean anything other than what it says." *Reeves v. Travelers Companies*, 296 F. Supp. 3d 687, 691 (E.D. Pa. 2017) (Baylson, J.) (internal quotations omitted), *citing Clarke v. MMG Ins. Co.*, 100 A.3d 271, 275 (Pa. Super. Ct. 2014); *Byoung Suk An v. Victoria Fire & Cas. Co.*, 113 A.3d 1283, 1288 (2015) (It is "well settled" under Pennsylvania law that "courts should not 'under the guise of judicial interpretation,' expand coverage beyond that provided in the policy."), *citing Guardian Life Ins. Co. of America v. Zerance,* 505 Pa. 345, 479 A.2d 949, 953 (1984).

### 1.    Pennsylvania Law Requires Physical Alteration to Property; Plaintiffs Admit that There is None Here

Financial losses unrelated to physical loss or physical damage at the insured premises do not satisfy the Policies' direct physical loss requirement. *Philadelphia Parking Authority v. Fed. Ins. Co.,* 385 F. Supp. 2d 280 (S.D.N.Y. 2005) (applying Pennsylvania law), is analogous to this case. There, the plaintiff operated a parking garage at the Philadelphia International Airport.

---

[5] Rather, Plaintiffs summarily contends the virus was present at their properties, simply because it is out in the world. (Compl. at ¶ 24) ("On or around March 2020, the United States, including the premises insured under the Policies, were infested with an insidious, invisible virus . . . ."). Additionally, Plaintiff summarily asserts that "the infection of premises by the virus is clearly set forth in Governor Wolf's Order as the cause of the closures." (Compl. at ¶ 37). But, the Order says no such thing. Again, where, as here, the allegations of the Complaint conflict with the Orders, the Orders control.

*Philadelphia Parking Auth.*, 385 F. Supp. 2d at 281. Since its garage depended on the airport to attract customers, it sustained a significant loss of business when the FAA grounded all flights in the United States following the 9/11 terrorist attacks. *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 282-283. Plaintiff sought business income, extra expense, and civil authority coverage under its property insurance policy.

The business income, extra expense, and civil authority coverage provisions in *Philadelphia Parking Authority* were substantially similar to those in the Policies here. Philadelphia Parking Authority's business income coverage applied to the insured's loss of income during the "period of indemnity" in the event of an actual interruption of the insured's business, provided that the "actual interruption of [Philadelphia Parking Authority's] operations [was] caused by ***direct physical loss or damage*** caused by a covered cause of loss . . . ." *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 282 (emphasis added). Similarly, the civil authority coverage only applied in the event "a civil authority ***prohibits*** access to [Philadelphia Parking Authority's] covered property because of ***direct physical loss or damage*** caused by a covered cause of loss to property not otherwise excluded in the vicinity of [Philadelphia Parking Authority's] covered property." *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 282 (emphasis added).

*Philadelphia Parking Authority* holds that such provisions unambiguously require that "a 'covered cause of loss' . . . result in some 'direct physical loss or damage,' which in turn must interrupt the insured's business operations." And, "***the claimed loss or damage must be physical in nature***." *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 288 (emphasis added). *Philadelphia Parking Authority* dismisses the complaint because it did not allege any facts to show physical loss or damage to the parking garage or other property in its vicinity. *Philadelphia Parking Auth.*, 385

F. Supp. 2d at 287. As such, the claim "clearly [did] not fit the plain language of the Business Income Provision." *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 287.

Here, Plaintiffs summarily contend the virus was present at their premises. (Compl. at ¶¶ 24, 37). There are no facts to support those allegations. And, even where present the virus does not cause ***physical*** loss or damage to property.

Likewise, the Orders did not physically alter any property. Rather, the Complaint alleges that "[p]ursuant to [Governor Wolf's] Executive Order, Fegley immediately closed the Restaurant Premises and the tenants of the Rental Premises were closed and ceased all in-person business operations." (Compl. at ¶ 28).[6] But, Plaintiffs admit this was done to prevent exposure to a virus. (Compl. at ¶ 26). Humans infecting humans—through direct contact, or otherwise—is not direct physical loss or damage to property.[7]

In essence, Plaintiffs assert that the Policies' direct physical loss requirement is met whenever a business suffers economic harm. If this was accepted as true, the business of commercial property insurance would be uprooted. It would also be contrary to *Philadelphia Parking Authority* and a host of other cases holding that direct physical loss requires actual, tangible, permanent, physical alteration of property, as discussed below.

> **2.** ***Philadelphia Parking Authority* is to the Same Effect as the Prevailing Law Nationally; Including the Growing Body of Authority Holding that the Virus and the Orders Do Not Cause Direct Physical Loss or Damage**

*Philadelphia Parking Authority* is consistent with the prevailing law nationally. *See, e.g.*, 10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary

---

[6] This allegation also conflicts with the Order, which expressly allowed restaurants to continue operations at the premises for food preparation, take-out, delivery, and drive-through service. (Compl., Ex. 3, p. 2).
[7] The Court may take judicial notice of the fact that businesses throughout the country conducted in-person operations before the Orders went into effect, while the Orders were in effect, and continued to so once the Orders expired, despite the ongoing pandemic and its attendant risks. Thus, the Orders were not issued as a result of any direct physical loss to anybody's property.

definition of that term, *is widely held* to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (Emphasis added). Indeed, the requirement of tangible change in property has been applied in multiple, recent, directly applicable decisions.

For example, *Mama Jo's* holds that there must be a physical change in property in order for there to be a direct physical loss. *See Mama Jo's*, 2020 WL 4782369 at *8. There, the insured alleged that dust and debris from a nearby road construction project caused customers to avoid its restaurant, causing a loss of business income. However, the insured was unable to identify any actual physical change to its property. Instead, the insured alleged that the property required additional cleaning and painting. These allegations were insufficient to demonstrate any actual, direct physical loss. Also, *Mama Jo's* holds that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Mama Jo's, Inc.,* 2020 WL 4782369 at *8 ("'[d]irect' and 'physical' modify loss and impose the requirement that the damage be actual.'"). *See also, Universal Image Prods., Inc. v. Chubb Corp*., 703 F.Supp.2d at 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 Fed.Appx. 569 (6th Cir. 2012); *Mastellone v. Lightning Rod Mut. Ins. Co.,* 884 N.E.2d 1130 (Ohio App. Ct. Jan. 31, 2008) (no direct physical loss because mold could be removed via cleaning, and its presence did not alter or otherwise affect the structural integrity of the siding).[8]

---

[8] Again, Plaintiff here admits the virus can be removed by cleaning. (Compl. at ¶ 29). Indeed, The Centers for Disease Control and Prevention (CDC) instructs that the Coronavirus can be wiped off surfaces by cleaning: "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." (*See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020), attached as Exhibit D; *See also* CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (accessed August 18, 2020)). This Court may take judicial notice of the CDC reports and other matters of public record without converting Cincinnati's motion to dismiss to a motion for summary judgment. *See, e.g., Doe*, 961 F.3d at 208.

The substantial majority of decisions expressly considering whether the virus and related Orders cause physical loss or damage likewise support Cincinnati. Most recently, the district court for the Southern District of Iowa recently granted Cincinnati's motion to dismiss a substantially similar complaint. *Oral Surgeons*, 2020 WL 5820552 (S.D. Iowa Sep. 29, 2020). The insured, a dental office, was required to temporarily cease performing elective dental procedures as part of the State's efforts to slow the spread of the Coronavirus. It asserted a claim for coverage for lost business income under a policy containing the same pertinent language as the Policies here.

*Oral Surgeons* dismisses its Complaint because the plain language of the policy, and the authorities Cincinnati relied on there, show the policy insures only against physical loss or damage to property—not purely economic loss: "Recent [c]ases cited by Cincinnati have held that virus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance. The few contrary cases cited by [Oral Surgeons] are distinguishable on their facts ***and not as well analyzed as the many authorities cited by Cincinnati***." *Oral Surgeons,* 2020 WL 5820552 at *1 (emphasis added). Cincinnati relies on the same authorities here, plus some additional newer authorities to the same effect as *Oral Surgeons*.

And, the district court for the Northern District of Illinois granted Cincinnati's motion to dismiss in *Sandy Point Dental, P.C. v. The Cincinnati Insurance Company*, 20-CV-2160, 2020 WL 5630465, (N.D. Ill. Sep. 21, 2020). The Plaintiff in *Sandy Point*, a dentist office, was also required to temporarily cease performing non-elective procedures:

> The critical policy language here—"direct physical loss"—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage. . . . Plaintiff has not pled any facts showing physical alteration or structural degradation of the property. Nothing about the property has been altered since March 2020. Plaintiff need not make any repairs or change any part of the building to continue its business.

*Sandy Point*, 2020 WL 5630465, at *2.[9]

     *Oral Surgeons* and *Sandy Point* are joined by *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, 2020 WL 5791583, at *1 (M.D. Fla. Sept. 28, 2020). *Infinity* dismisses the complaint, with prejudice. It holds there is no business income or civil authority coverage because the complaint "fails to allege facts describing how the Property suffered any actual physical loss or damage," and that any amendment would be futile.

     *Infinity* applies the holding in *Mama Jo's* to the analogous facts presented in that case and here. It also favorably cites the decisions discussed in this brief:

> Significantly, Plaintiff is not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property. Courts across the country have held that such coverage does not exist where, as here, policyholders fail to plead facts showing physical property damage. . . . [A]lthough the Court is sympathetic to Plaintiff and all insureds that experienced economic losses associated with COVID-19, there is simply no coverage under the policies if they require "direct physical loss of or damage" to property.

*Infinity*, 2020 WL 5791583 at **4-5. *See also*, *Malaube*, 2020 WL 5051581.

     The trend is the same outside of throughout the country. *See, e.g.*, *Mark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indemnity Co. of Conn., et al.*, No. 2:20-cv-044230-AB-SK (C.D. Cal. Oct. 2, 2020);[10] *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020); *Pappy's Barber Shops, Inc. et al. v. Farmers Group, Inc. et al.*, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020);[11] *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020); *10E, LLC v. Travelers Indem, Co. of Conn.*,

---

[9] *Sandy Point* correctly holds, "The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure." *Sandy Point*, 2020 WL 5630465, at *2.

[10] A copy of the district court's written decision in *Mark's Engine* is attached as Exhibit E.

[11] The district court recently denied Plaintiff's motion to amend its Complaint in *Pappy's*. A copy of that order is attached as Exhibit F.

2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) ("Physical loss or damage occurs only when property undergoes a distinct, demonstrable, physical alteration. . . . Detrimental economic impact does not suffice."); *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (no direct physical loss absent a distinct, demonstrable, physical alteration to the property); *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y. May 20, 2020); *It's Nice, Inc. v. State Farm Fire and Casualty Co.*, No. 20 L 547 (Sep. 29, 2020, Du Page County, Illinois), *citing Sandy Point, supra* (*see* Ex. D, Trans. pp. 28-29);[12] *Rose's 1, LLC v. Erie Ins. Exchange*, 2020 WL 4589206 (Aug. 6, 2020, Super. Ct., D.C.); *Inns by the Sea v. Cal. Mut. Ins. Co.*, No. 20-cv-1274 (Aug. 6, 2020, Monterey County, CA); *Gavrilides Mgm't Co., LLC v. Michigan Ins. Co.*, 2020 WL 4561979 (Jul. 21, 2020, Ingram County, MI).

Importantly, the recent Coronavirus coverage decisions join a long line of authorities throughout the country, concerning a variety of claims and the same or similar policy language. *See, e.g.*, 10A *Couch on Ins.* § 148:46; *Phila. Parking Auth. v. Federal Ins. Co.*, 385 F. Supp. 2d 280, 287-88 (S.D.N.Y. 2005) ("'direct physical' modifies both loss and damage," and therefore "the interruption in business must be caused by some physical problem with the covered property … which must be caused by a 'covered cause of loss'"); *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.,* 465 F.3d 834 (8th Cir. 2006) (applying Minnesota law) ("To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless."); *See also*, *N.E. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) (applying Georgia law) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not

---

[12] A copy of the Order and hearing transcript in *It's Nice* is attached as Exhibit G.

been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Companies*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *3 (S.D. Miss. Nov. 19, 2007) ("Plaintiff's interpretation of the [insurance] contract would render the words 'direct' and 'physical' meaningless in the context of the policy.") (collecting cases). *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 44 (2d Cir. 2003); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 780 (2010) (direct physical loss requires a "distinct, demonstrable [or] physical alteration"); *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 978-979 & n. 4 (D. Kan. 2016) (applying Kansas law) (the phrase "physical loss or damage" "unambiguously" requires "physical alteration" of property).

As in all these cases, the plain and unambiguous language of the Plaintiffs' Policies requires direct *physical* loss or damage *to property*. However, Plaintiffs admit that is not what happened here. On this fundamental issue, this case cannot be distinguished from any of the authorities requiring actual, tangible, permanent, physical alteration of property.

### 3. Construing the Policy Language as a Whole Further Confirms that "Physical" Loss or Damage Requires a Demonstrable Alteration of the Property

Under Pennsylvania law, insurance policy language, including undefined terms and phrases, must "be read in light of the context and the overall provisions of the policy in which [they] appear[ ]." *Nautilus Ins. Co. v. Bike & Build, Inc.*, 340 F. Supp. 3d 399, 418 (E.D. Pa. 2018) (alterations in original). Here, the Policies' Business Income coverage is limited by its own terms to the "Period of Restoration." (Policy, pp. 62-63 & 120). The definition of "Period of Restoration" provides context to the meaning of the phrase direct physical loss or damage. Specifically, the Policies provide that the "Period of Restoration" begins after the direct physical loss or damage

18

(or any applicable waiting period following the direct physical loss or damage), and ends on the earlier of: (1) the date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality, or (2) the date when business is resumed at a new permanent location. (Policy, pp. 62-63 & 120).

Read together, these provisions show that the phrase direct physical loss refers to a loss that requires physical repair, rebuilding, or replacement of property that has sustained actual, demonstrable, physical alteration. *See, e.g.*, *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) (explaining that "repair" and "replace" in period of restoration clause "contemplate physical damage to the insured premises as opposed to loss of use of it"); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (2002) (explaining that, absent a physical damage requirement, a provision limiting coverage to the time necessary to "rebuild, repair, or replace" would "be meaningless").

Here, there can be no "Period of Restoration" because the Coronavirus does not constitute direct physical loss or damage to property requiring any physical repair, rebuilding or replacement. The inapplicability of the "Period of Restoration" element to Plaintiffs' alleged loss further demonstrates that there is no direct physical loss or damage to property. This serves as a strong additional indication that property damage coverages are not designed to cover purely economic losses that were not occasioned by direct physical loss or damage to property. As such, absent direct physical loss or damage resulting in the physical alteration of property, there is no Business Income coverage.

### 4.    The Absence of a Virus Exclusion is Irrelevant

Exclusions do not come into play unless there is first direct physical loss. *See, e.g.*, *Erie Ins. Grp.*, 95 A.3d at 322. Indeed, courts throughout the country appropriately recognize that the

presence or absence of a virus, pandemic, or communicable disease exclusion is irrelevant where, as here, the insured cannot meet its initial burden to show that the virus and related Orders cause direct **physical** loss or damage to property.

For example, the policies in *Mark's Engine, Turek, 10E, LLC*, *Pappy's, Diesel*, *Malaube* and *Gavrilides **did*** contain virus exclusions. But, *10E, LLC*, *Pappy's, Malaube* and *Gavrilides* never reached the virus exclusion question because the respective insureds failed to meet their initial burden to allege direct physical loss or damage to property. *See, e.g.*, *10E, LLC*, 2020 WL 5359653 at *4; *Pappy's,* 2020 WL 5500221 at *3 ("[b]efore even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the policy terms."); *Gavrilides*, 2020 WL 4561979 at Trans. pp. 20:19 – 21:18. *Mark's Engine, Turek,* and *Diesel* likewise dismiss the insureds' complaints for failure to show direct physical loss, identifying the policies' virus exclusions as a secondary, alternative basis for their holding. *See Mark's Engine*, No. 2:20-cv-044230-AB-SK (Ex. E at pp. 8-9); *Turek*, 2020 WL 5258484 at *8; *Diesel*, 2020 WL 4724305 at *6.

Conversely, the policies in *Infinity, Sandy Point, Oral Surgeons, Mudpie, Inn's by the Sea*, *Rose's 1*, and *Social Life Magazine **did not*** contain virus exclusions. Those cases nevertheless dismiss the plaintiffs' respective complaints because they fail to allege facts showing direct physical loss to property in the first instance. *See, e.g., Rose's 1, LLC v. Erie Ins. Exch*., 2020 WL 4589206 at *5. Thus, as all of these cases show, the absence of a virus exclusion in the Policy is irrelevant.

In any event, the allegations of the Complaint fully support Cincinnati's position here. The Complaint alleges that "[a]s a result of the[ ] closures, Business Income from [the insured] locations ceased and Fegley has spent and incurred substantial Extra Expenses to maintain these

premises to minimize the suspension of operations and continue business when possible. This includes periodic maintenance to disinfect these premises and clean surfaces infected with the virus." (Compl. at ¶ 29). But, as this allegation shows, even if the virus was present, it does not cause physical loss or damage to property. Thus, there is no coverage for Plaintiffs' alleged losses. Also for the same reason, there is no need for an exclusion.

### 5.      No Coverage for Rental Premises

Even if the Restaurant Policy provided coverage for Plaintiffs' purely financial losses arising from the Orders temporarily requiring it to cease in-person dining operations at its Restaurant Premises—which it does not—Plaintiffs fail to allege any facts whatsoever to show they are entitled to coverage for financial losses sustained by their tenants at the Rental Premises. In particular, there are no allegations to show any physical loss or damage to Plaintiffs' property at the Rental Premises, *e.g.,* the building or fixtures. And, neither the Restaurant Policy nor the Rental Policy provide coverage to Plaintiffs for lost business income and extra expenses incurred by their tenants for temporary closures or "periodic maintenance to disinfect these premises and clean surfaces [allegedly] infected with the virus." (Compl. at ¶ 29). Likewise, there are no allegations to show Plaintiffs sustained a loss of "Rental Value" at all, let alone as a result of direct physical loss or damage to Plaintiffs' property at the Rental Premises, as required by the Rental Policy. (Compl., Ex. B, pp. 39-40, 84-85 (Business Income and Extra Expense), pp. 59-60, 92 (defining "Operations" and "Rental Value"), As such, the Rental Policy does not apply.

## III.     There Is No Civil Authority Coverage

As established, the Policies' Civil Authority coverage only applies if there is a Covered Cause of Loss, meaning direct physical loss that is not excluded or limited, to property other than the Plaintiffs' property. Even then, there is only Civil Authority coverage if, among other things,

the action of the civil authority prohibits access to the insured premises. (Policy, pp. pp. 40 & 85). "[L]osses due to curfew and other such restrictions are not generally recoverable. * * * If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A *Couch on Ins.* § 167:15.

### A.    There is No Direct Physical Loss or Damage to Other Property

Cincinnati has demonstrated that direct physical loss or damage to property other than the Plaintiffs' property is necessary. Courts nationwide have upheld that requirement. *See, e.g., Philadelphia Parking Auth.*, 385 F. Supp. 2d at 289 (applying Pennsylvania law); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, 8 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.,* 2011 WL 13214381, 6 (E.D. Tex. Mar. 30, 2011); *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, 10 (S.D. Tex. Feb. 15, 2008); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006).

Just as the Coronavirus is not causing direct physical loss or damage to the Plaintiffs' property, it is not causing direct physical loss or damage to other property. The Complaint fails to identify any distinct, demonstrable, physical alteration of property, anywhere. Rather, it alleges Plaintiffs' Restaurant and Rental Premises closed in response to the Governor's Order. (Compl. at ¶¶ 27-29). No facts are alleged that demonstrate that this happened because of direct physical loss or damage to anybody's property.

There are no alleged facts asserting any direct physical loss or damage to property. There are no alleged facts showing any physical change or alteration of anybody's property by the Coronavirus or the Orders. There are, however, facts showing that the Coronavirus can be removed

via cleaning. (Compl. at ¶ 29). As established, this is the marker of something that is ***not*** direct physical loss (or damage). Accordingly, there is no Civil Authority coverage.

### B.      The Requisite Prohibition of Access Is Lacking

The Civil Authority coverage also requires that access to Plaintiffs' premises be prohibited by an order of civil authority. But, the Plaintiffs do not allege the Orders prohibited access to their premises. Nor could they. Even if Plaintiffs elected to close their Restaurant Premises, the Order (which, again, controls over the contradictory allegations of the Complaint) required that restaurants and bars, like Plaintiffs', temporarily cease in-person dining and bar services. Plaintiffs and the public remained free to access the premises for all other operations, including take-out, delivery, and food preparation. (*See, e.g.*, Compl. at ¶¶ 31-32). Because there was no prohibition of access, there is no Civil Authority coverage.

The prohibition of access requirement is pervasive nationally. As discussed, the insured parking garage owner in *Philadelphia Parking* failed to show the FAA's order grounding flights after 9/11 prohibited access to its premises, as required for civil authority coverage under Pennsylvania law. Likewise, in *Ski Shawnee, Inc. v. Commonwealth Ins. Co.,* 2010 WL 2696782, 4 (M.D. Pa. July 6, 2010), a bridge repair hindered or dissuaded the majority of customers from visiting a ski resort, but did not constitute prohibition of access to the premises.[13]

---

[13] To the same effect is *Southern Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004) (applying Oklahoma law) (access to hotels was not prohibited by FAA order grounding flights in response to 9/11 attacks). *See also, e.g.*, *Syufy Enterprises v. Home Ins. Co. of Indiana*, 1995 WL 129229, 2 (N.D. Cal. Mar. 21, 1995) (riot-related curfew prevented insured's customers from being out and about, it did not prohibit access to the insured's premises); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.,* 268 A.2d 611, 614 (D.C. 1970) (same); *Schultz Furriers, Inc. v Travelers Cas. Ins. Co. of America*, 2015 WL 13547667, 6 (N.J. Super. L. July 24, 2015) (despite serious traffic issues in lower Manhattan following Superstorm Sandy, it was not completely impossible for the public to access the insured store). *See also, Goldstein v Trumbull Ins. Co.*, 2016 WL 1324197, 12 (N.Y. Sup. Ct. Apr. 05, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, 4 (Minn. Ct. App. June 7, 2005).

Again, these well-reasoned decisions are equally applicable to claims like Plaintiffs'. Indeed, courts routinely reject claims just like Plaintiffs' claim here. *See, e.g.*, *10E, LLC*, 2020 WL 5359653 at *5 (no business income, extra expense, or civil authority coverage where government orders required restaurant to temporarily cease in-person dining services). *Gavrilides* holds the same: "[I]t seems like the plaintiff is saying that the physical requirement is met because people were physically restricted from dine-in services. But, that argument is just simply nonsense. And it comes nowhere close to meeting the requirement that there's some, there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building." *Gavrilides*, Trans., pp. 20: 12-18

Likewise, in *Pappy's*, COVID-19 related orders temporarily prevented the insured from operating its barbershop. But, *Pappy's* correctly finds the orders did not prohibit access to the premises, as required for civil authority coverage:

> [T]he complaint does not allege that any COVID-19 Civil Authority Orders prohibited Plaintiffs from access to their business premises. Rather, it only alleges that Plaintiffs were prohibited from operating their businesses at their premises. Plaintiffs fail to make any distinction between their place of business (i.e., the physical premises where they operate their business), and the business itself, but this distinction is relevant to coverage under the Policy. The Policy insures property, in this case Plaintiffs' property and physical places of business, and not Plaintiff's business itself. To that end, the civil authority coverage provision only provides coverage to the extent that access to Plaintiff's physical premises is prohibited, and not if Plaintiff's are simply prohibited from operating their business. The government orders alleged in the complaint prohibit the operation of Plaintiff's business; they do not prohibit access to Plaintiffs' place of business.

*Pappy's Barber Shops*, 2020 WL 5500221 at *6.

Because the Complaint's allegations establish access was not prohibited, the Civil Authority coverage does not apply.

## IV.   There is No Bad Faith

There is no bad faith here because, as demonstrated, Cincinnati's coverage position is legally the correct position. There is no bad faith unless an insured presents "clear and convincing evidence: (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Washington Nat'l Ins. Co.*, 642 Pa. 153, 156, 170 A.3d 364, 365 (2017). Furthermore, in the absence of controlling Pennsylvania precedent, it is not bad faith for an insurer to rely on the "reasoning and approaches that other courts have found convincing." *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 44, 626 A.2d 502, 510 (1993).

Here, Cincinnati's position is legally correct. Thus, it has an eminently reasonable basis for its position. Plaintiffs do not allege any facts to show that the Coronavirus altered any property at their premises. Indeed, Plaintiffs do not even allege facts to show the virus was at the premises. The economic loss caused by the Orders is not direct physical loss or damage to property. Furthermore, Cincinnati relies on closely analogous authority in this jurisdiction and others throughout the country. Accordingly, there is, as a matter of law, a reasonable basis for Cincinnati's position that the Policies do not provide coverage for Plaintiffs' financial losses.

## CONCLUSION

Cincinnati issued property insurance policies. The policies provide coverage only where there has been some actual *physical* loss or damage *to property*. Plaintiffs do not (and cannot) allege any facts to show the virus or the Orders cause such damage. Instead, their claim is one for purely economic losses sustained as a result of government orders temporarily restricting its in-person dining operations, or the operations of others. Because the virus and the Orders do not physically alter any property, coverage does not apply. For this reason and the other reasons

discussed above, Cincinnati respectfully requests this Court grant its motion and dismiss the Complaint, with prejudice.

LITCHFIELD CAVO LLP

By: */s/ Lawrence M. Silverman*
   Lawrence M. Silverman, Esquire
   Identification No. 17854
   silverman@litchfieldcavo.com
   **LITCHFIELD CAVO LLP**
   1515 Market Street, Suite 1220
   Philadelphia, PA 19102
   215-557-0111/215-557-3771 fax

   *Attorneys for Defendant,*
   *The Cincinnati Insurance Company*